IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TIFFINEY BARFIELD-COTTLEDGE, § | |
| § | |
| Plaintiff, § | |
| § | Civil Action No. 3:10-CV-2231-D |
| VS. § | |
| § | |
| UNIVERSITY OF NORTH TEXAS, § | |
| § | |
| Defendant. § | |

MEMORANDUM OPINION
AND ORDER

The court must decide whether defendant University of North Texas ("UNT") is entitled to summary judgment dismissing the claims of *pro se* plaintiff Tiffiney Barfield-Cottledge ("Cottledge") for a violation of the Equal Protection Clause of the Fourteenth Amendment, and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* For the reasons that follow, the court dismisses Cottledge's Title VII retaliation claim, construes her Equal Protection Clause claim as a race discrimination claim brought under 42 U.S.C. § 1983, raises *sua sponte* that UNT is entitled to summary judgment dismissing this claim, and affords Cottledge an opportunity to oppose summary judgment as to the claim.

I

UNT is a public university located in Denton, Texas. In 2001 the Texas Legislature created the University of North Texas at Dallas ("UNT Dallas"), a new institution of higher education, to be located in Dallas. *See* Tex. Educ. Code Ann. § 105.501 (West Supp. 2011).

In creating UNT Dallas, the Legislature outlined certain operating procedures, including that UNT Dallas would be required to attain a certain enrollment of full-time equivalent students before it would be permitted to operate independently and hire its own faculty. *Id.* § 105.501(d). Until UNT Dallas met the specified enrollment, UNT hired UNT Dallas' faculty and UNT Dallas operated as a "system center" (referred to as the "Dallas campus") of UNT. *Id.*

In 2006 plaintiff Cottledge applied for and was offered a one-year, non-tenure track position as a lecturer in the Department of Criminal Justice of the UNT College of Public Affairs and Community Service. Although UNT hired and employed Cottledge, she was assigned to teach primarily at UNT Dallas. Her employment contract was renewable yearly, at the option of UNT, for a period of up to five years. UNT renewed Cottledge's employment contract for three consecutive academic years (2007-2008, 2008-2009, and 2009-2010).

By 2009 UNT Dallas had met the statutory requirements for operating as an independent university. To begin its operations as an independent university in the fall of 2010, UNT Dallas assumed responsibility for hiring faculty and other employees in November 2009. According to UNT, after November 2009, UNT Dallas was solely responsible for recruiting and hiring faculty to teach at UNT Dallas.

In March 2010 UNT notified Cottledge and several other faculty members whom it had employed to teach at the UNT Dallas campus by letter that their employment contracts

would not be renewed. Because UNT Dallas had assumed responsibility for hiring its own faculty, UNT no longer had a need for the faculty whom it had employed to teach at the UNT Dallas campus. Cottledge was subsequently offered a one-year contract to teach either at UNT or UNT Dallas for the 2010-2011 academic year. Cottledge accepted the offer and taught at UNT Dallas.

On February 27, 2010 and July 9, 2010 Cottledge applied for four faculty positions at UNT Dallas, but she was not hired for any position. At some point in February or March of 2010, Cottledge spoke with Katie Mangan ("Mangan"), a reporter from the Chronicle of Higher Education, in connection with a forthcoming article on UNT's non-renewal of faculty contracts.

On July 15, 2010 Cottledge filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination and retaliation on the basis of race. After receiving a right to sue letter, she filed the instant lawsuit against UNT alleging discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment, and retaliation, in violation of Title VII. UNT moves for summary judgment seeking dismissal of all of her claims.

II

Because UNT moves for summary judgment on claims as to which Cottledge will bear the burden of proof at trial, UNT can meet its summary judgment obligation by pointing the court to the absence of evidence to support the claims. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 325 (1986). Once UNT does so, Cottledge must go beyond her pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Cottledge's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Cottledge's failure to produce proof as to any essential element of a claim renders all other facts immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007 ) (Fitzwater, J.). Summary judgment is mandatory if Cottledge fails to meet this burden. *Little*, 37 F.3d at 1076.

III

The court turns first to Cottledge's claim alleging a violation of the Equal Protection Clause of the Fourteenth Amendment.

A

Cottledge purports to assert a claim that UNT violated the Equal Protection Clause of the Fourteenth Amendment. UNT argues that the complaint can be construed to allege an Equal Protection Clause claim based on a "class-of-one" theory. UNT posits that the Supreme Court recently held that this theory did not apply in the public employment context. *See Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 599 (2008). There is nothing in Cottledge's complaint, however, that suggests that she intends to assert a claim on this basis. But because Cottledge is proceeding *pro se*, the court construes the allegations of her complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980) (per curiam); *SEC v.*

*AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). Under this approach, the court interprets her Equal Protection Clause claim to be one for race discrimination against a public employer, brought under 42 U.S.C. § 1983.

B

The burden shifting analysis prescribed for employment discrimination claims in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), is applicable to suits alleging discrimination that are brought against a public employer under § 1983. *See, e.g.*, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 n.1 (1993) ("we shall assume that the *McDonnell Douglas* framework is fully applicable to racial-discrimination-in-employment claims under 42 U.S.C. § 1983."); *Sreeram v. La. State Univ. Med. Ctr.-Shreveport*, 188 F.3d 314, 322 (5th Cir. 1999) (stating that "the burden shifting analysis prescribed in *McDonnell Douglas* . . . for employment discrimination claims is also applicable in such suits brought under §§ 1981 and 1983.").

Because Cottledge does not refer to any direct evidence of discrimination in her complaint or summary judgment response, it is apparent that she intends to rely only on circumstantial evidence.[1] A plaintiff relying on circumstantial evidence must establish discrimination using the "modified *McDonnell Douglas* approach [.]" *Rachid v. Jack in the*

---

[1] "'Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption.'" *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 n.3 (5th Cir. 2003) (quoting *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002)) (age discrimination case). "If an inference is required for the evidence to be probative as to [a defendant's] discriminatory animus in firing [plaintiff], the evidence is circumstantial, not direct." *Sandstad*, 309 F.3d at 897-98.

*Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (age discrimination case).

As modified, *McDonnell Douglas* consists of three stages.  First, Cottledge must establish a prima facie case of discrimination, which "creates a presumption that [UNT] unlawfully discriminated against [her]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  Second, if she meets this burden, the burden shifts to UNT to articulate a legitimate, nondiscriminatory reason for the employment action taken against Cottledge. *See St. Mary's Honor Ctr.*, 509 U.S. at 506-07.  UNT's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003).  Third, if UNT meets its production burden, Cottledge may prove intentional discrimination by proceeding under one of two alternatives: the pretext alternative or the mixed-motives alternative. *See Rachid*, 376 F.3d at 312.  Under the pretext alternative, Cottledge must "offer sufficient evidence to create a genuine issue of material fact . . . that [UNT's] reason is not true, but is instead a pretext for discrimination[.]" *Id.* (internal quotation marks and citation omitted).  Under the mixed-motives alternative, Cottledge must offer sufficient evidence to create a genuine issue of material fact "that [UNT's] reason, while true, is only one of the reasons for its conduct, and another motivating factor is [Cottledge's] protected characteristic[.]" *Id.* (internal quotation marks and citation omitted).

C

Although UNT does not contend that Cottledge has failed to make a prima facie showing of race discrimination, the court raises this failure *sua sponte*.[2]

It is unclear whether Cottledge intends to base her race discrimination claim on UNT's decision not to renew her employment contract after the 2009-2010 academic year or on the decision not to hire her for any of the four posted positions for which she applied in 2010 (assuming *arguendo* that Cottledge could establish that UNT was the employer who declined to hire her). But under either scenario, even if the court assumes that Cottledge can establish some of the elements of a prima facie case of race discrimination, she has failed to adduce evidence as to all of them.

To establish a prima facie case of discrimination based on the decision not to renew her employment contract, Cottledge may show that (1) she was within the protected class; (2) she was qualified for her position; (3) she was discharged; and (4) she was replaced by someone outside the protected class, or, in the case of disparate treatment, other similarly-situated employees were treated more favorably. *See, e.g., Curry v. Telect, Inc.*, 2009 WL 1659344, at *4 (N.D. Tex. June 15, 2009) (Fitzwater, C.J.) (citing *Bryan v. McKinsey & Co.*,

---

[2]The court can raise *sua sponte* that summary judgment is warranted on a particular claim, provided it affords the nonmovant notice and a fair opportunity to file an opposition response. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *9 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) (citing *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp.*, 932 F.2d 442, 445 (5th Cir. 1991)).

375 F.3d 358, 360 (5th Cir. 2004) (addressing discharge-based 42 U.S.C. § 1981 claims)). Cottledge has not produced evidence that the person who received her position when UNT decided not to renew her contract was someone outside the protected class or that other similarly-situated employees were treated more favorably.

Regarding the decision not to hire her for any of the posted positions for which she applied in 2010,

> [t]o establish a *prima facie* case of discrimination for [her] failure to hire claim, Plaintiff must show that: 1) [she] is a member of a protected class; 2) [she] applied for a position; 3) [she] was qualified for that position when [she] applied; 4) [she] was not selected for the position; and 5) after Defendant declined to hire [her], the position either remained open or a person who is not a member of a protected class was chosen in [her] stead.

*Reed v. Efficient Networks, Inc.*, 2004 WL 1717369, at *5 (N.D. Tex. July 30, 2004 (Solis, J.) (addressing Title VII claim) (citing *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994)). Cottledge has not produced evidence that each of the positions for which she applied remained open or that a person who is not a member of a protected class was chosen in her stead.

The court therefore raises *sua sponte* that UNT is entitled to summary judgment dismissing Cottledge's § 1983 race discrimination claim on the ground that Cottledge has failed to establish a prima facie case. Within 30 days of the date of this memorandum opinion and order, Cottledge may file a response brief and evidence appendix addressing why the court should not grant summary judgment dismissing her § 1983 claim. After

considering this response, the court will decide whether to invite UNT to file a reply brief.

D

UNT has introduced evidence of a legitimate, nondiscriminatory reason for its decision not to renew Cottledge's employment contract. *St. Mary's Honor Ctr.*, 509 U.S. at 506-07. UNT has adduced evidence that, beginning in November of 2009, UNT Dallas assumed sole responsibility for hiring its own faculty, including faculty for the 2010-2011 academic year. According to UNT's evidence, because UNT Dallas had assumed responsibility for hiring its own faculty, UNT no longer had a need for the faculty, such as Cottledge, whom it had employed to teach at the UNT Dallas campus. Accordingly, it did not renew employment contracts for these faculty members. UNT has also adduced evidence that it did not participate in the employment decisions for the jobs for which Cottledge applied in 2010.

Even if the court were to assume that Cottledge could establish a prima facie case of race discrimination, her § 1983 claim would fail for the additional reason that Cottledge has adduced no evidence that would permit a reasonable jury to find that UNT's reason for not renewing her contract, or, alternatively, for not hiring her for one of the four open positions,[3] is pretextual, or that Cottledge's race was a factor that motivated UNT's decision. *See Rachid*, 376 F.3d at 312. The court therefore raises *sua sponte* that UNT is also entitled to summary judgment dismissing Cottledge's § 1983 claim because she has failed to meet her

---

[3]The court assumes *arguendo* that Cottledge can establish that UNT was the employer who made the hiring decisions for these positions.

burden at the third step of the *McDonnell Douglas* burden-shifting analysis. In the response brief and evidence appendix that the court is permitting Cottledge to file to address her failure to establish a prima facie case of race discrimination, she may also address why the court should not dismiss her § 1983 claim based on her failure to establish pretext or mixed-motives under the *McDonnell Douglas* framework. After considering this response, the court will decide whether to invite UNT to file a reply brief.

IV

The court next considers Cottledge's retaliation claim. Cottledge alleges that UNT retaliated against her, in violation of Title VII, by firing and demoting her after she spoke with various members of the media in February and March of 2010 regarding UNT's decision not to renew the contracts of certain faculty members and to force these faculty members to reapply for their positions.

A

Title VII's anti-retaliation provision prohibits employers from "discriminat[ing] against" an employee "because he has opposed any practice made an unlawful employment practice" by Title VII or "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e–3(a). Cottledge offers no direct evidence of retaliation, so she must proceed under the *McDonnell Douglas* burden shifting paradigm. She must therefore demonstrate a prima facie case for retaliation by showing that (1) she engaged in a protected activity; (2) an

adverse employment action occurred; and (3) a causal link existed between the protected activity and the adverse employment action. *See, e.g., Walker v. Norris Cylinder Co.*, 2005 WL 2278080, at *9 (N.D. Tex. Sept. 19, 2005) (Fitzwater, J.) (citing *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996)). As to the third element, the initial requirement that a plaintiff show a "causal link" between a protected activity and an adverse employment action is "much less stringent" than the "but for" causation that a jury must find. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001); *see also Khanna v. Park Place Motorcars of Hous., Ltd.*, 2000 WL 1801850, at *4 (N.D. Tex. Dec. 6, 2000) (Fitzwater, J.) (characterizing prima facie burden as "minimal").

If Cottledge establishes a prima facie case, the burden shifts to UNT to articulate a legitimate, nondiscriminatory reason for the alleged retaliatory action taken. This burden is one of production, not of proof. *See Wooten v. Fed. Express Corp.*, 2007 WL 63609, at *16 (N.D. Tex. Jan. 9, 2007) (Fitzwater, J.), *aff'd*, 325 Fed. Appx. 297 (5th Cir. 2009).

If UNT meets its production burden, Cottledge must adduce evidence that would permit a reasonable jury to find that the adverse employment action would not have occurred but for the protected conduct. *See Walker*, 2005 WL 2278080, at *9. "After the employer has produced evidence to rebut the employee's *prima facie* case of retaliation, the showing that the plaintiff must make to establish causation is more onerous than that initially required to present a *prima facie* case." *Phillips v. Credit Lyonnais*, 2002 WL 1575412, at *8 n.4 (N.D. Tex. July 16, 2002) (Fish, C.J.) (citing *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112,

1122 n.8 (5th Cir. 1998); *Long*, 88 F.3d at 305 n.4). "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4.

B

The court first considers whether Cottledge has established a prima facie case of retaliation. UNT does not appear to dispute the first or third elements of Cottledge's prima facie case, but it contends that Cottledge cannot establish that she engaged in a protected activity under Title VII.

"An employee engages in a protected activity by (1) opposing an employment practice made unlawful by Title VII, or (2) by making a charge or testifying, assisting, or participating in an investigation, proceeding, or hearing under Title VII." *Arrieta v. Yellow Transp., Inc.*, 2008 WL 5220569, at *16 (N.D. Tex. Dec. 12, 2008) (Fitzwater, C.J.) (citing *Long*, 88 F.3d at 304), *aff'd sub nom. Hernandez v. Yellow Transp., Inc.*, 641 F.3d 118 (5th Cir. 2011). "The underlying practice need not actually be illegal, but the employee must at least reasonably believe that it is." *Id.* (citing *Long*, 88 F.3d at 304).

UNT contends that Cottledge's complaints to the media are not a protected activity under Title VII. The court agrees. Cottledge has adduced evidence that she spoke with at least one reporter, Mangan, about UNT's decision not to renew contracts for certain faculty members and to require these faculty members to reapply for their positions. She has not produced any evidence, however, that would permit a reasonable jury to find that UNT's

decision not to renew these contracts was based on the consideration of impermissible factors, such as race; that UNT's decision not to renew these contracts was otherwise unlawful under Title VII; or that she reasonably believed UNT's decision to not renew these contracts was unlawful under Title VII. In sum, there is simply no evidence that the "employment practice" about which Cottledge allegedly spoke to Mangan was an unlawful employment practice under Title VII.[4]  *See, e.g.*, *Watkins v. Tex. Dep't of Crim. Justice*, 269 Fed. Appx. 457, 462 (5th Cir. 2008) (per curiam) (holding that employee's critical comments to media concerning prison underfunding and staff shortages were not "protected activity" under Title VII and therefore could not serve as grounds for Title VII retaliation action). Because Cottledge has not pointed to any other protected activity that could serve as the basis for her retaliation claim,[5] the court concludes that she has failed to establish a prima facie case of retaliation and that UNT is therefore entitled to summary judgment dismissing

---

[4]In fact, Cottledge has failed to produce any evidence to refute UNT's position that it did not renew contracts for the faculty it hired to teach at the UNT Dallas campus simply because UNT Dallas had assumed sole responsibility for hiring its own faculty for the academic year beginning in the Fall of 2010.

[5]UNT also maintains that Cottledge's filing an EEOC complaint cannot serve as a basis for her retaliation claim because she did not file her EEOC complaint until July 15, 2010, i.e., four months *after* she received the letter notifying her that her contract would not be renewed. The court notes that there is no indication, either in Cottledge's complaint or in her summary judgment response, that she intends to allege that UNT retaliated against her for filing an EEOC complaint. In fact, Cottledge specifically asserts in her summary judgment response that UNT retaliated against her on or about March 1, 2010. In any event, a reasonable jury could not find that Cottledge's filing of the EEOC complaint was a basis for UNT's decision not to renew her employment contract; that decision was made, at the latest, in March 2010, and Cottledge filed her EEOC charge in July 2010.

this claim.

* * *

For the reasons explained, the court grants UNT's motion for summary judgment dismissing Cottledge's Title VII claim for retaliation. The court construes Cottledge's Equal Protection Clause claim as one for race discrimination brought under § 1983, and it raises *sua sponte* that UNT is entitled to summary judgment dismissing this claim, either because she cannot establish a prima facie case or because she cannot create a genuine fact issue concerning the pretext or mixed-motives alternative. The court grants Cottledge 30 days from the date this memorandum opinion and order is filed to file a response brief and evidence appendix addressing why the court should not grant summary judgment dismissing this claim. After considering this response, the court will decide whether to invite UNT to file a reply brief.

**SO ORDERED.**

January 9, 2012.

_____<br>
SIDNEY A. FITZWATER<br>
CHIEF JUDGE